**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LAKEISHA H.,**

                              **Plaintiff,**

        **v.**                                                    **1:19-CV-01395**

**COMMISSIONER OF THE SOCIAL**
**SECURITY ADMINISTRATION,**

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION and ORDER**

## I.    INTRODUCTION

Plaintiff Lakeisha H. brings this action pursuant to the Social Security Act, 42

U.S.C. § 405(g), for review of a final determination by the Commissioner of Social

Security denying her application for benefits.  _See_ Dkt. 10.  Plaintiff alleges that the

Administrative Law Judge's ("ALJ") decision denying her application for benefits was not

supported by substantial evidence and was contrary to the applicable legal standards, and

seeks remand. _See id._  Defendant Commissioner of the Social Security Administration

opposes Plaintiff's arguments.  _See_ Dkt. 14.   Pursuant to Northern District of New York

General Order No. 8, the Court proceeds as if both parties had accompanied their briefs

with a motion for judgment on the pleadings.

## II.   PROCEDURAL HISTORY

1

Plaintiff protectively filed applications for Social Security Disability benefits ("SSD") and Supplemental Security Income benefits ("SSI") on May 6, 2015, with an onset of disability of January 31, 2015. Tr. 120-121, 183-195.  Her claims were denied after initial review, Tr. 122-129, and on November 4, 2015 Plaintiff requested a hearing before an ALJ.  Tr. 130-134.  A hearing was held before ALJ Gregory Moldafsky on December 1, 2017 with Plaintiff appearing in Jamaica, New York and the ALJ presiding via video teleconference from Alexandria, Virginia.  Tr. 36-95.  Plaintiff appeared and testified *pro se*.  On September 27, 2018, ALJ Moldafsky issued a decision finding Plaintiff not disabled.  Tr. 17-33.  Plaintiff, through newly retained counsel, requested review of the ALJ's decision by the Appeals Council based on new evidence. Tr. 179.  However, the Appeals Council denied the request for review on September 10, 2019. Tr. 1-7.  Plaintiff then filed the instant action in this Court.  This Court has jurisdiction over the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   FACTS

The Court assumes familiarity with the facts and will set forth in the body of the decision only those facts relevant to the Court's decision.

## IV.   THE ADMINISTRATIVE LAW JUDGE'S DECISION

In a decision dated September 27, 2018, ALJ Moldafsky found that despite the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, status-post laparoscopic left hemicolectomy, and morbid obesity, Tr. 23, Plaintiff retained the residual functional capacity ("RFC") to perform light work except she could stand/walk 4 hours in an 8-hour workday; occasionally climb ramps and stairs;

2

never climb ladders, ropes, and scaffolds; occasionally stoop, balance, kneel, and crouch; never crawl, work at unprotected heights, or with dangerous machinery; occasionally be exposed to extreme cold, extreme heat, and wetness; and no more than occasional pushing/pulling with foot controls. Tr. 23-24.  Based on this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, Tr. 27, but found she could perform other work as a sub assembler of plastic parts, an inspector of small parts, and a rental clerk. Tr. 28-29.

## V.    STANDARD OF REVIEW

"A district court may set aside the [ALJ's] determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008) (internal citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "An evaluation of the 'substantiality of evidence must also include that which detracts from its weight.'"  *Scott v. Astrue*, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *7 (E.D.N.Y. July 9, 2010)(quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988)).   "[I]f there is substantial evidence in the record to support the Commissioner's factual findings, those findings are conclusive and must be upheld." *Id.* (citing *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999) and 42 U.S.C. § 405(g)).

Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).  Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

## VI.    DISCUSSION

Plaintiff makes four arguments in support of her request for remand:

(1)  The ALJ Failed to Properly Develop the Record for the *Pro Se* Claimant;

(2)  Remand is Warranted Based on New Evidence Before the Appeals Council;

(3)  The ALJ Failed to Properly Evaluate Plaintiff's Subjective Statements;

(4)  The ALJ Was Not Properly Appointed Pursuant to the Appointments Clause of Article II of the United States Constitution.

The Court will address each in turn.

### a.  Developing the Record for the *Pro Se* Claimant

First, Plaintiff contends the ALJ failed to properly develop the record in light of her *pro se* status before the ALJ.  Plaintiff argues that the ALJ "failed to request a detailed opinion from treating physician Dr. Shoulton or any of [Plaintiff's] treating specialists regarding Plaintiff's functional capacity in a work environment nor did he inform the claimant of the importance of getting such an opinion.  In fact, he did not even obtain Dr.

4

Shoulton's complete medical chart despite being informed by [Plaintiff] at the hearing that this doctor has all of her records."  Plt. Brief, Dkt. 10, at 12 (citing Tr. 62-63).  Plaintiff also argues that the ALJ's duty to develop a full and fair record dovetails with the treating physician rule.  She cites cases standing for the propositions that the ALJ's duty to develop the record includes advising a *pro se* plaintiff on the importance of evidence from a treating physician, and that before an ALJ can reject an opinion of a *pro se* claimant's treating physician because it is conclusory, basic principles of fairness require that the ALJ to inform the plaintiff of the ALJ's proposed action and give the plaintiff an opportunity to obtain a more detailed statement from the treating physician.  *See* Dkt. 10 at 11 (citing *Scott*, 2010 WL 2736879, *13); *id.* at 14 (citing *Scott, supra* at *13; *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704 (JPO), 2015 WL 321832, *30 (S.D.N.Y. Jan. 23, 2015); *Providence v. Barnhart*, No. 02 Civ. 9208(SHS), 2003 WL 22077445, *8 (S.D.N.Y. Sept. 5, 2003); *Gelman v. Chater*, No. CV 94 5951 (RJD), 1996 WL 429008 *4 (E.D.N.Y. July 24, 1996); *Jimenez v. Massanari*, No. 00 CIV. 8957(AJP), 2001 WL 935521 *12-13 (S.D.N.Y. Aug. 16, 2001).

Plaintiff argues that the ALJ's failure to properly develop the record was highly prejudicial. Dkt. 10 at 15.  She contends that if she "had a representative to assist in developing the record and obtain a more detailed opinion from Dr. Shoulton or if the ALJ had fulfilled his duty to develop the record, it surely would have resulted in an opinion from a treating doctor that would provide more detailed information on the basis of [her] disability." *Id.*  In support of the contention that such information was available, Plaintiff cites to opinions from Dr. Shoulton that Plaintiff's later-retained attorney obtained after the

ALJ's decision.  *Id.*  In this regard, Plaintiff points to a Multiple Impairment Questionnaire dated April 22, 2019 in which Dr. Shoulton provided a summary of Plaintiff's conditions and offered opinions as to Plaintiff's work-related capabilities and limitations. Tr. 9-13. There, Dr. Shoulton stated that she treated Plaintiff 2-3 times a year since December 2012, most recently on January 25, 2019. Tr. 9.  She diagnosed back pain, knee pain, sciatica, herniated lumbar disc, and arthritis.  Dr. Shoulton cited to MRI findings of the lumbar spine from June 2013 and December 2017 that supported her diagnoses  *Id.*. Plaintiff's primary symptoms were back pain radiating to both legs and knee pain. Tr. 10. Dr. Shoulton opined that the symptoms and limitations detailed in the report are reasonably consistent with documentation of Plaintiff's conditions. Tr. 13.  The symptoms and limitations were present since Dr. Shoulton started treating Plaintiff.  *Id.*

Dr. Shoulton opined Plaintiff was able to sit 2 hours total and stand/walk 2 hours total in an 8-hour workday. Tr. 11.  When sitting, Plaintiff needed to get up and move around every 30 minutes and not sit again for 10 minutes. *Id.*  Plaintiff also needed to elevate both legs to waist level every 30 minutes when sitting. She could occasionally lift/carry 10 pounds, but never more. *Id.*  Dr. Shoulton assessed that Plaintiff's pain, fatigue, or other symptoms occasionally interfered with Plaintiff's attention and concentration (up to 1/3 of an 8-hour workday). Tr. 12.  Plaintiff also needed to take unscheduled breaks to rest at unpredictable intervals during the day for 10 minutes each time. *Id.*  Dr. Shoulton estimated Plaintiff would be absent from work, on average, two to three times a month due to her impairments or treatment. Tr. 13.

Plaintiff contends that because of the deficiencies by the ALJ in developing the

record, the matter must be remanded.

Defendant responds that the ALJ's affirmative duty to develop the record required him to "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such a determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." Def. Brief at 6 (quoting 42 U.S.C. § 423(d)(5)(B)).  Defendant points out that under the applicable regulations "every reasonable effort" means that the Social Security Administration will make an initial request for evidence from a claimant's medical source and "one follow-up request," if the evidence has not been received at any time between 10 and 20 calendar days after the initial request. *Id.* (citing 20 C.F.R. § 404.1512(b)).  Defendant acknowledges that when a claimant proceeds *pro se* the ALJ has a heightened duty to develop the record, but contends that the ALJ fulfilled the duty here.  Defendant argues that the ALJ "was both scrupulous and conscientious in seeking to identify all of Plaintiff's providers and treatment for the purpose of obtaining records."  Dkt. 14 at 5-6.  In this regard, Defendant points out that at the December 1, 2017 hearing, the ALJ informed Plaintiff that he had received no medical records past 2015. Tr. 60.  He then asked questions about Plaintiff's treatment and providers—particularly Dr. Shoulton—in a discussion that spanned nine pages. Tr. 60-69.  At the close of the hearing, the ALJ told Plaintiff that he would get the new medical information to his case manager, who would request the new medical records. Tr. 94.  He explained that "some of [the providers] … are better at being responsive than others. So, after a few bothers we should get it all here and then we will take a look at it. I believe that they will give you a copy or at least let you know what we got in, and then w[e']ll render a

decision after we have a chance to look at all the new stuff that I haven't had a chan[c]e to see." Tr. 94-95.  Defendant contends that the ALJ then followed through on those actions. Defendant points out that the ALJ requested updated medical records from Dr. Shoulton's office three times, Tr. 780-89, but the physician did not respond to any of the requests. Defendant argues that Dr. Shoulton's failure to respond to the requests for records contradicts Plaintiff's assertion that if the ALJ had fulfilled his duty to develop the record, "it surely would have resulted in an opinion from a treating doctor that would provide more detailed information." Dkt. 14 at 8 (quoting Dkt. 10 at 15).

Defendant also indicates that after the hearing the ALJ received about 300 pages of medical records from other providers, and sent a copy to Plaintiff for her review and comment. Tr. 778-79.  Defendant notes that the notice that accompanied that evidence informed Plaintiff of her rights, including the right to submit written comments, submit additional records, submit written questions to the authors of the new evidence, request a supplemental hearing, and request the ALJ to issue a subpoena to require the attendance of a witness or submission of records. Tr. 778.  The notice also informed Plaintiff that if she did not respond within ten days, the ALJ would enter the new evidence into the record and issue a decision. Tr. 779.  Thus, Defendant maintains, there is no merit to Plaintiff's allegation that the ALJ failed to proffer the extensive medical records obtained after Plaintiff's hearing for her review and comment.

Defendant takes issue with Plaintiff's contention that the ALJ failed to adequately develop the record because he did not request a detailed opinion from Dr. Shoulton (or from another treating source) or advise Plaintiff of the importance of getting such an opinion.  In this regard, Defendant contends that the two cases Plaintiff primarily relies on

8

for the proposition that an ALJ should request a detailed opinion from a treating physician, *Myers v. Astrue*, No. 7:06-cv-0331, 2009 WL 2162541 *2-3 (N.D.N.Y. July 17, 2009) and *Peed v. Sullivan*, 778 F. Supp. 1241, 1247 (E.D.N.Y. Nov. 22, 1991), no longer provide persuasive support.  Defendant notes that *Myers* relied, at least in part, on 20 C.F.R. § 404.1512(e), a regulation that at the time required an ALJ to recontact a claimant's treating physician whenever a report contained a conflict or ambiguity that needed resolution, failed to contain all the necessary information, or did not appear to be based on medically acceptable clinical or laboratory diagnostic techniques.  However, Defendant points out, the so-called "duty to recontact" was made discretionary in 2012. *Id.* at 9. Defendant maintains that under the new standard, "an ALJ is permitted to take several different actions to cure an incomplete record, including: (1) recontacting a medical source, (2) requesting additional existing evidence, (3) requesting a consultative examination (as occurred in this case (Tr. 469-75)), or (4) asking the claimant or 'others' for more information." Dkt. 14 at 9 (citing 20 C.F.R. § 404.1520b(b)(2)).  Defendant argues that *Peed* is no longer persuasive authority for the same reason, *id.*, at 10 (citing *Dougherty-Noteboom v. Berryhill*, No. 17-cv-00243-HBS, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018)),[1] and because *Peed* relied on a now-outdated proposition that

---

[1]The Western District in *Dougherty-Noteboom* wrote:

… *Peed* should not be given weight, as [it was] decided when the regulations explicitly required the ALJ to recontact a treating physician in light of an incomplete record. 20 C.F.R. § 404.1512(e) (Effective to July 31, 2006) ("When the evidence we receive from your treating physician ... is inadequate ... [w]e will first recontact your treating physician...."). This regulation was amended in 2012 to "delete the provision that imposed a duty to recontact a treating physician." *Mura v. Colvin*, No. 16-cv-6159P, 2017 WL 2543939, at *4 n.5 (W.D.N.Y. June 13, 2017).

2018 WL 3866671, at *10.

opinions of a plaintiff's treating physician should be accorded "all but controlling" weight. *Id.* (citing *Williams v. Colvin*, No. 15-cv-6719-KMK-PED, 2016 WL 11270671, at *11-12 (S.D.N.Y. Dec. 14, 2016), *adopted sub nom. Williams v. Comm'r of Soc. Sec.*, 2017 WL 4326119 (S.D.N.Y. Sept. 28, 2017)).[2]

Defendant also argues that Plaintiff's reliance on *Scott* for the proposition that the ALJ's duty to develop the record includes "advising the *pro se* Plaintiff on the importance of evidence from his or her treating physician" is misplaced.  Defendant notes that on the date of the hearing, Plaintiff submitted an opinion from Dr. Shoulton - a one page letter dated November 28, 2017 from Dr. Shoulton stating: "Please be advised, Patient is under my care, Patient is being treated Headache [sic], Migraine Variant, Contusion, knee, Effusion of knee, Joint pain, knee, Knee gives out, Knee sprain, and Severe Back Pain. Due to mentioned Symptoms patient is not medically cleared to work."  Tr. 698. Defendant argues that based on the submission of this opinion, "it is not clear that the ALJ needed to advise [Plaintiff] of the importance of providing a medical opinion."  Dkt. 14 at 8,

---

[2]In *Williams*, the Southern District wrote:

The court in *Peed* relied on then-applicable case law dictating that the opinions of a Plaintiff's treating physician should be accorded "all but controlling" weight in this context. *Peed*, 778 F. Supp. At 1247; *see e.g., Bluvband v. Heckler*, 730 F.2d 886, 892 (2d Cir. 1984) ("It is well-established in this circuit that the expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary."). However, the Second Circuit's formulation of the treating physician rule as described in *Bluvband* was subsequently abrogated by agency regulations, which reduced the deference due to treating source opinions and have been upheld by the Court of Appeals, *See Schisler v. Sullivan*, 3 F.3d 563, 566-68 (2d Cir. 1993) (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). Under these rules, opinions of non-treating sources, such as consultative examiners, can override treating physicians where the non-treating source's opinion is supported by evidence in the record. *Id.*

2016 WL 11270671, at *11-12.

n. 5.  The Court notes that Defendant also contends that "[s]uch opinions are never entitled to controlling weight because they 'would direct the determination or decision of disability.'" Dkt. 14 at 13 n. 10 (quoting 20 C.F.R. § 404.1527(d)).  Defendant also argues that *Scott* in inapposite because it "was decided at a time when a treating physician opinion was all but decisive in Social Security disability claims." *Id.* at 8, n. 5.

Defendant also argues that there are no obvious gaps in the administrative record and the ALJ already had a complete medical history from which to assess Plaintiff's residual functional capacity.  Defendant maintains that Plaintiff's "medical records are extensive, including over 500 pages of treatment records and reports from December 2012 through February 2018." Dkt. 14 at 13 (citing Tr. 241-777).  Defendant maintains that "[a]lthough the record does not contain a functional assessment from Plaintiff's treating physician, it does contain her opinion that Plaintiff is disabled [citing to the November 28, 2017 letter], as well as over 100 pages of that physician's treatment records (which include physical examinations that took place over several years)."  *Id.* (citing Tr. 241-363).

In addition, Defendant maintains:

The record also includes an assessment of Plaintiff's functional limitations by a consulting physician who personally examined Plaintiff and ordered x-ray testing of her right knee. (Tr. 467-75). Additionally, the record contains chiropractic treatment notes (Tr. 364-411), diagnostic studies such as MRIs and x-rays (Tr. 428-29, 477), treatment notes from New York Medical & Diagnostic (Tr. 447-67), hospital records from St. Barnabas Medical Center (Tr. 488-676), a treatment note from Five Towns Neurology (Tr. 693-97), hospital records from North Shore University Hospital (Tr. 699-773), and treatment notes from James Sullivan, M.D. (Tr. 774-77). Thus, there is abundant evidence in the administrative record that supports the ALJ's decision.

Dkt. 14 at 13-14 (citing *Vay v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 267, 272-73 (W.D.N.Y. 2018) (holding that ALJ fulfilled his obligation to develop the record in a *pro se*

case where there were no obvious gaps in the record, the ALJ asked plaintiff's mother to supply him with any additional evidence that she might possess which would establish her child's disability, and he held the record open after the hearing).

In her reply, Plaintiff argues that the ALJ did not attempt to enforce a subpoena on the treating physician to obtain the relevant records as he should have. Dkt. 17 at 2 (citing *Almonte v. Apfel*, No. 96 Civ. 1119, 1998 WL 150996 *7 (S.D.N.Y. March 31, 1998) ("Possible avenues the ALJ could have pursued included a subpoena, enforcement of the subpoena, and advice to the plaintiff of the importance of the evidence."); *Rodriguez v. Apfel*, No. 96 Civ. 1132, 1997 WL 691428 *6 (S.D.N.Y. Nov. 4, 1997) ("At the very least, the ALJ should have informed [the plaintiff] of his right to subpoena and cross-examine witnesses.")).  Plaintiff also argues that "the Commissioner's speculation that Dr. Shoulton would not have provided an opinion if requested to do so by the ALJ is wildly unsupported, particularly since the doctor readily supplied such an opinion when requested to do so by newly retained counsel before the Appeals Council." *Id.* (citing Tr. 9-13).

In addition, Plaintiff contends that the amended regulations cited by Defendant do not change the longstanding duty based on holdings from the Second Circuit that require the ALJ to obtain an opinion from a treating doctor when a claimant appears *pro se.*  Dkt. 17 at 2 (citing *Myers v. Astrue*, No. 7:06-CV-0331, 2009 WL 2162541, at *14 (N.D.N.Y. July 17, 2009)(collecting cases)).  Plaintiff contends that "[w]hile the Regulations discuss various ways the ALJ may develop the record, they have never imposed a mandatory requirement that an ALJ must, on every case, obtain a medical opinion from a treating doctor. Therefore, changes to 20 C.F.R. § 404.1512 and § 416.912 have no impact on the decisions from the Second Circuit or this District on that issue." *Id.*  In the sur-reply,

12

Defendant argues that Plaintiff misconstrues the *Myers* holding because it was based on a prior regulations that described a mandatory duty which the Court interpreted as a duty to request a medical opinion, whereas that duty was later made discretionary after *Myers* was decided. Dkt. 21 at 2-3.  Thus, Defendant contends, the changes in the pertinent regulation lessen the persuasive value of the Court's decision in *Myers*. *Id.* at 1-3.

### Analysis

"Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)(quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir.2009) (internal quotation marks and brackets omitted)). "Social Security disability determinations are 'investigatory, or inquisitorial, rather than adversarial.'" *Id.* (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir.2004), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005)(internal quotation marks omitted)). "'[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Id.* at 112–13 (quoting *Butts*, 388 F.3d at 386 (internal quotation marks omitted)).  "An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record." *Camellia O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1153 (DJS), 2021 WL 354099, at *5 (N.D.N.Y. Feb. 2, 2021)(citing 42 U.S.C. § 423(d)(5)(B)("[T]he Commissioner of Social Security ... shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability."); *Perez v. Chater*, 77 F.3d at 47 (2d Cir. 1996)(noting that a

13

"hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record")(citation omitted)). "An ALJ's failure to comply with this mandate is legal error." *Id.* (citing *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016)). "However, the ALJ's duty to develop the record is not unlimited and is discharged when the ALJ 'possesses [the claimant's] complete medical history' and there are no 'obvious gaps or inconsistencies' in the record." *Id.* (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted)).

When a claimant proceeds *pro se*, "the ALJ's duties are 'heightened.'" *Moran*, 569 F.3d at 113 (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990)). This is because the ALJ "must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" by "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." *Id.* (quoting *Cruz*, 912 F.2d at 11 (alteration and internal quotation marks omitted)). This heightened duty to develop the record which is "rooted in the ALJ's duty to 'protect the rights of *pro se* litigant[s] by ensuring that all of the relevant facts [are] sufficiently developed and considered." *Scott*, 2010 WL 2736879, at *12 (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980) and citing *Cruz*, 912 F.2d at 11).

"On appeal, the district court must undertake a 'searching investigation of the record' to ensure that the rights of the *pro se* claimant were protected." *Camellia O.*, 2021 WL 354099, at *5 (quoting *Cruz*, 912 F.2d at 11). Thus, "before reviewing the ALJ's disability determination under the substantial evidence standard, the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's

14

regulations' and also fully and completely developed the administrative record." *Scott*, 2010 WL 2736879, at *12 (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982); *Rodriguez v. Barnhart*, No. 02–CV5782(FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov.7, 2003)("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.")(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

    "Remand may be required where the ALJ fails to discharge his or her affirmative obligation to develop the record when making a disability determination." *Id.* at *7 (citing *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2009); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996); *Echevarria*, 685 F.2d at 755 (holding that in deciding whether the Commissioner's findings are supported by substantial evidence, courts must first ensure that claimant is afforded a full and fair hearing and a fully developed record)).  Remand may also be required where an ALJ fails to fill gaps in the administrative record. *See id.* *7 ("Notwithstanding the substantial deference afforded to the ALJ's determination, remand is appropriate where there are gaps in the administrative record or where the ALJ has applied an improper legal standard.")(citing *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir.1999)); *id.* at *9 ("In light of the ALJ's affirmative duty to develop the administrative record, an ALJ 'cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'")(quoting *Rosa*, 168 F.3d at 79)(addition citations omitted)). In addition, "the ALJ's duty to develop the record includes advising the *pro se* plaintiff on the importance of evidence from his or her treating physician." *Id.* at *13 (citing *Batista v. Barnhart*, 326 F. Supp.2d 345, 352 (E.D.N.Y. 2004)).

    "Moreover, before an ALJ can reject an opinion of a *pro se* claimant's treating

physician because the opinion is conclusory, 'basic principles of fairness require that he [or she] inform the claimant of his [or her] proposed action and give [the claimant] an opportunity to obtain a more detailed statement.'" *Id.* at *9 (quoting *Hankerson v. Harris*, 636 F.2d 893, 896 (2d Cir.1980)); *see id* at * 13 ("At a minimum, 'before the ALJ can reject an opinion of a *pro se* claimant's treating physician because it is conclusory, basic principles of fairness require that he [or she] inform the [plaintiff] of his [or her] proposed action and give [plaintiff] an opportunity to obtain a more detailed statement.'")(quoting *Hankerson*, 636 F.2d at 896 and citing *Batista*, 326 F. Supp.2d at 354 (in turn citing 42 U.S.C. § 1382c)).  Giving "advance notice to a *pro se* claimant of adverse findings . . . allows the *pro se* claimant to produce additional medical evidence or call [her] treating physician as a witness."  *Champion v. Berryhill*, No. 16-CV-4723, 2017 WL 4404473, at *14 (S.D.N.Y. Sept. 14, 2017), *report and recommendation adopted sub nom*. *Champion v. Comm'r of Soc. Sec*., No. 16-CV-4723, 2017 WL 4402565 (S.D.N.Y. Oct. 2, 2017)(internal quotation marks and citations omitted).

The Court is not satisfied that the ALJ provided Plaintiff with a full and fair hearing under the Act's regulations and fully and completely developed the administrative record. At the outset, the ALJ was required by statute to develop Plaintiff's "complete medical history for at least a twelve-month period if there was reason to believe that the information was necessary to reach a decision." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)(citing, *inter alia*, 42 U.S.C. § 423(d)(5)(B)).  Section 423(d)(5)(B) applies to all claimants, not just those proceeding *pro se.*  For reasons discussed below, the ALJ did not fulfill this mandate with regard to the *pro se* Plaintiff.   Further, the second clause of Section 423(d)(5)(B), cited by Defendant, requires the Commissioner to make "every

reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis."  42 U.S.C. § 423(d)(5)(B).  This too applies to all claimants.  For reasons discussed below, the ALJ did not fully satisfy his heightened burden to make "every reasonable effort to obtain" all medical evidence from Plaintiff's treating physician, Dr. Shoulton.

At Plaintiff's December 1, 2017 hearing, the ALJ indicated that he did not have any medical evidence beyond 2015.  Plaintiff provided the ALJ with Dr. Shoulton's November 28, 2017 letter (addressed above).  Plaintiff informed the ALJ that Dr. Shoulton was her primary care provider and, in the context of a discussion about Plaintiff's medical providers, stated that Dr. Shoulton "has everything." Tr. 62.   After the hearing, the ALJ through his case manager attempted to contact Plaintiff's medical providers for additional medical records.  This included three attempts with Dr. Shoulton's office.[3]  As indicated, Dr. Shoulton did not respond.  "The duty to develop the record goes hand in hand with the treating physician rule, which requires the ALJ to give special deference to the opinion of a claimant's treating physician." *Leutung v. Comm'r of Soc. Sec.*, 2019 WL 1385847, at *4 (W.D.N.Y. March 27, 2019)(quoting *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353-54

---

[3]The Court notes that these three attempts consisted of (1) two telephone calls to Dr Shoulton's office on January 4, 2018 where it appears that the ALJ's case manager left a message on general voicemail for a staff member from Dr. Shoulton's office to call back regarding a records request; (2) faxing a December 12, 2018 letter (the date on the letter is December 12, 2017, which when read in context appears to be a typographical error) to Dr Shoulton's office requesting records; and (3) re-faxing the December 12, 2018 letter on December 19, 2018. Tr. 780-89.

(E.D.N.Y. 2004)); *see Camellia O.*, 2021 WL 354099, at *6 (same).[4]  Given Plaintiff's *pro se* status and the potential importance of Dr. Shoulton's records and possible opinion as to the effects of Plaintiff's medical conditions on her ability to perform work related functions, *see Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent (citation omitted) with the other substantial evidence in [the] case record.'")(quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)), the ALJ had a heightened duty to attempt to obtain - either himself or through Plaintiff -  evidence from Dr. Shoulton even though the physician did not respond to the three requests for records. *See Moran*, 569 F.3d at 113 (The ALJ "must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" by "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts.").  The Social Security Administration's three attempts to obtain records from Dr. Shoulton, while perhaps meeting the minimum requirements of "reasonable efforts," do not satisfy the ALJ's heightened duty to complete the record when dealing with a *pro se* claimant.  After Dr. Shoulton failed to respond to the Social Security Administration's three attempts to obtain records, the ALJ could have contacted Plaintiff to see if she could have obtained records from Dr. Shoulton herself.

---

[4]As Judge Stewart indicated in *Camellia O.*, "[f]or claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'" *Camellia O.*, 2021 WL 354099, at *6 (quoting 20 C.F.R. § 416.920c(a)). But since Plaintiff filed her claims on May 6, 2015, the treating physician rule applies. *See id.* (citing *Claudio v. Berryhill*, 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.")).

And the record is unclear whether the ALJ was aware that Dr. Shoulton failed to respond, at least until after the ten (10) days that Plaintiff was able to indicate an intention to provide additional evidence or seek further action by the ALJ such as a subpoena before the ALJ closed the evidence.  The record indicates that after the hearing, the ALJ obtained approximately 300 pages of treatment notes, diagnostic studies, and medical opinion evidence from Plaintiff's providers other than Dr. Shoulton.  Tr. 241-777.  The ALJ sent a copy of the newly obtained evidence to Plaintiff for review, comment, and potential challenge. Tr. 778-79.  The notice that accompanied this evidence indicated that the "additional evidence" included "Office Treatment/Other Records - Dr. Yardly Shoulton (Exhibit 16F and 17F)." Tr. 778.  However, the notice erroneously identified "Office Treatment/Other Records – Dr. Yardly Shoulton" among the additional evidence that was obtained after Plaintiff's hearing.  In fact, Exhibit 16F is a five-page treatment note from Marco Benitez, PA-C, not Dr. Shoulton. Tr. 693-97.   Exhibit 17F is the one-page letter from Dr. Shoulton dated November 28, 2017 (referenced above) that Plaintiff submitted to the ALJ at the  December 2017 hearing.  Tr. 69-70.  Thus, the approximately 300 pages of "additional evidence" submitted to Plaintiff did not include any evidence from Dr. Shoulton.

As Defendant indicates, the notice that accompanied the "additional evidence" informed Plaintiff of her rights, including the right to submit written comments, submit additional records, and submit written questions to the authors of the new evidence. Tr. 778-79.  The notice also indicated that Plaintiff could request a supplemental hearing at which she would have the opportunity to appear, testify, produce witnesses, and submit additional evidence in written or oral statements concerning the facts and law.  *Id.*  The notice indicated that if she requested a supplemental hearing, the ALJ would grant such a

request unless the ALJ received additional records that supported a fully favorable decision. *Id.* Further, the notice indicated that Plaintiff could request that the ALJ issue a subpoena to require the attendance of witnesses or the submission of records, but the subpoena request had to be submitted in writing no later than 10 days before the date of any supplemental hearing. *Id.* In addition, the notice indicated that the ALJ would issue a subpoena "if reasonably necessary from the full presentation of the case." *Id.* The notice also indicated that if the ALJ did not receive a response from Plaintiff within ten days of the date she received the notice, the ALJ would assume that Plaintiff did not wish to submit any written statements or records, and that she did not wish to request a supplemental hearing or to orally question the authors of the new evidence. *Id.* Finally, the notice indicated that if Plaintiff did not respond in ten days, the ALJ would enter the new evidence in the record and issue his decision. *Id.*

While the Court cannot fault the ALJ for not producing what Dr. Shoulton failed to provide, the ALJ's mistaken representation that he received and provided records from Dr. Shoulton might have lulled Plaintiff into a false belief that the 300 pages of records included Dr. Shoulton's records. Therefore, she might not have searched through the records to see whether she needed to obtain any additional records from Dr. Shoulton - whether herself or through a request to the ALJ to issue a subpoena. Further, the notice that accompanied these records did not advise Plaintiff of the importance of evidence from her treating physician, and Defendant does not point to where this advice was given otherwise. There is no merit to Defendant's argument that such advice was not needed because Plaintiff provided the ALJ with Dr. Shoulton's conclusory November 28, 2017 letter-opinion. Merely providing this evidence to the ALJ does not signify that Plaintiff

understood the importance of a treating physician's opinion of a claimant's ability to perform job-related functions.  Moreover, as stated above, Defendant asserts that the November 28, 2017 letter-opinion would not be entitled to controlling weight because it directs the determination or decision of disability, Dkt. 14 at 13 n. 10 (quoting 20 C.F.R. § 404.1527(d)), thereby indicating that Plaintiff was unaware of the importance of a fuller opinion from her treating physician.  Without such advice, it may well have been that even if Plaintiff reviewed the "additional records" and determined that Dr. Shoulton's records were not there, she might not have realized that the absence of such records could make a difference.  And in this case, the absence of information from Dr. Shoulton could well have made a difference.  In her Multiple Impairment Questionnaire, Dr. Shoulton assessed Plaintiff with limitations more restrictive than the RFC.  In addition, she opined that Plaintiff would be absent from work, on average, two to three times a month due to Plaintiff's impairments or treatments - a circumstance that the vocational expert testified would mean the individual would be unable to maintain competitive employment. Tr. 93.  The Court recognizes that Plaintiff provided Dr. Shoulton with the Multiple Impairment Questionnaire after Plaintiff's counsel provided it to Plaintiff.  *See* Tr. 14.  But it is not a foregone conclusion that Dr. Shoulton would not have provided a similar response if Plaintiff contacted Dr. Shoulton after realizing that the ALJ was unsuccessful in obtaining evidence from Dr. Shoulton, and after being advised of the importance of evidence from a treating physician.  If Dr. Shoulton's opinions in the Multiple Impairment Questionnaire were presented, the results of the proceeding might have been different.

Further, once the ALJ realized that Dr. Shoulton had not responded to the three requests, he should have explored other means to complete the record given the

21

potentially important role Dr. Shoulton's records and opinion might have played in the disability determination. After the hearing, the ALJ was aware that Dr. Shoulton was Plaintiff's primary care provider, had "everything" about Plaintiff's care and treatment, and had issued a cursory opinion that Plaintiff's symptoms from various relevant medical conditions rendered her medically unable to work. *See* Tr. 698. While the regulations in effect at the time did not require the ALJ to obtain a medical source report or opinion from a treating physician, they did provide for discretionary authority to do so. Further, Section 423(d)(5)(B) requires the ALJ to make reasonable efforts to obtain from an individual's treating physician all medical evidence prior to evaluating medical evidence obtained from any other source on a consultative basis. Although the regulations define reasonable efforts as a few attempts to contact a medical source, Second Circuit law requires that an ALJ be held to a heightened duty of developing the record, including filling gaps in the record, so that a *pro se* claimant can have a full and fair hearing. Here, the ALJ did not satisfy this heightened duty.

The ALJ should have been aware that records from Dr. Shoulton were missing. At the December 1, 2017 hearing where the ALJ said he had no medical records past 2015, Plaintiff provided the ALJ with Dr. Shoulton's November 28, 2017 letter indicating that Plaintiff was under Dr. Shoulton's care for various medical conditions and, in Dr. Shoulton's opinion, the symptoms from these conditions medically disqualified Plaintiff from working. Plaintiff also indicated that Dr. Shoulton was her primary care physician and "had everything." Thereafter, the ALJ made three unsuccessful attempts to obtain evidence from Dr. Shoulton. In his decision, the ALJ referenced the November 28, 2017 letter as Dr. Shoulton's opinion that Plaintiff was not medically cleared to work due to her

22

"current symptoms," Tr. 27 (citing Exhibit 17F).  It is clear from the ALJ's decision that he realized, at least by the time he drafted his decision, that Exhibit No.16F was not medical evidence from Dr. Shoulton.  Indeed, in that decision the ALJ correctly identified Exhibit No.16F as progress note from Marco Benitez, PA-C.  Tr. 26.  It is a reasonable inference that the ALJ presumed, or should have presumed, that Dr. Shoulton's November 28, 2017 opinion about Plaintiff's then-current symptoms would have been supported by some medical evidence or records after 2015, especially since the November 28, 2017 letter indicates that Plaintiff "is under [Dr. Shoulton's] care" and "is being treated" for several medical issues.  Tr. 698.  Even if the absence of recent medical evidence from Dr. Shoulton does not constitute a gap in the administrative record, the ALJ did not fulfill his affirmative obligation to fully develop the record when making a disability determination, or ensure that Plaintiff was afforded a full and fair hearing based on a fully developed record.

Moreover, even assuming that the ALJ could not have done more to obtain Dr. Shoulton's records or a medical source statement, the ALJ rejected Dr. Shoulton's November 28, 2017 opinion, essentially, because it is conclusory.  But the ALJ did not advise Plaintiff that this would be the case so Plaintiff could attempt to obtain additional records or an updated or opinion from Dr. Shoulton.  In the ALJ's decision, he indicated that "[a]s recently as November 2017, Yardly PJ Shoulton, M.D., reported that the claimant was under his care for migraine headaches, a knee effusion, joint pain, knee sprain, and back pain." Tr. 26 (citing Exhibit 17F).  Apparently citing to the report of Marco Benitez, PA-C, the ALJ states: "That same month [Plaintiff] had a normal gait, 5/5 motor strength, with no significant deficits in reflexes or sensation." *Id.*  The ALJ continues:

She was assessed with obstructive sleep apnea, insomnia, cervical

> radiculopathy, and lumbar radiculopathy by Marco Benitez, PA-C. She
> complained that she has difficulty sleeping at night despite taking Ambien.
> She also reported continuous upper, middle, and lower back pain. She
> stated that she experiences numbness and tingling in her lower back, but her
> pain does not radiate to her extremities. She reported that she cannot stay in
> one position too long and she noted that her pain is treated with Motrin,
> Advil, and naproxen as needed. (Exhibit 16F).

Tr. 26.  The ALJ afforded limited weight to Dr. Shoulton's opinion contained in his

November 28, 2017 letter "that the claimant is not medically cleared to work due to her

current symptoms of migraine headaches, knee effusion, joint pain, knee sprain, and back

pain" because the opinion "is out of proportion to the medical records as a whole including

the physical examination findings and the type and degree of treatment needed." Tr. 27.

If the ALJ had notified Plaintiff in advance that he would reject Dr. Shoulton's opinion

because it is out of proportion to other medical records as a whole, Plaintiff could have

attempted to obtain a fuller opinion from Dr. Shoulton such as that obtained after the ALJ's

determination.

In the end, the Court finds that the case must be remanded because the ALJ did

not satisfy his heightened duty to protect the rights of the *pro se* litigant by failing to ensure

that all of the relevant facts are sufficiently developed and considered, *see Moran*, 569

F.3d at 112; *Cruz*, 912 F.2d at 11; *Hankerson*, 636 F.2d at 895; *Scott*, 2010 WL 2736879,

at *12, by failing to advise the *pro se* claimant on the importance of evidence from her

treating physician, *see Scott*, 2010 WL 2736879, at *13, and by failing to provide

advanced notice to the *pro se* claimant of adverse findings such to allow the *pro se*

claimant to produce additional medical evidence or call her treating physician as a witness.

*See Hankerson*, 636 F.2d at 896; *Scott*, at *9 and *13;  *Batista*, 326 F. Supp.2d at 354;

*Champion*, 2017 WL 4404473, at *14.  Plaintiff may not prevail on remand, but she is

entitled to have her disability claims decided on a full record.

### b.  New Evidence Before the Appeals Council

Next, Plaintiff argues that remand is necessary based on new evidence submitted

to the Appeals Council.  Dkt. 10 at 16-19.  Specifically, she alleges that Dr. Shoulton's

April 2019 functional assessment is new, material, and that "there is certainly a reasonable

probability" that the ALJ would have reached a different conclusion had he seen the

assessment. *Id.* at 17.  Further, she argues that there was good cause for not submitting

the evidence earlier because she was *pro se* at the time of her hearing and the ALJ

neither obtained any detailed medical opinions from treating sources nor informed Plaintiff

of the importance of doing so. *Id.* at 18.  Defendant opposes this request for remand,

arguing that the Appeals Council properly determined that "this evidence does not show a

reasonable probability that it would change the outcome of the [ALJ's] decision." Dkt. 14 at

16 (quoting Tr. 2).

### Analysis

In *Perez v. Chater*, 77 F.3d 41 (2d Cir. 1996), the Second Circuit discussed how

Courts should approach new evidence submitted to the Appeals Council under the

Commissioner's Regulations in effect at that time:

> Social Security regulations expressly authorize a claimant to submit new and
> material evidence to the Appeals Council when requesting a review of an
> ALJ's decision. If the new evidence relates to a period before the ALJ's
> decision, the Appeals Council 'shall evaluate the entire record including the
> new and material evidence submitted…[and] then review the case if it finds
> that the administrative law judge's action, findings, or conclusion is contrary
> to the weight of the evidence currently of record.

*Perez*, 77 F.3d at 44.  The Commissioner later modified the regulations to also require that

a claimant show good cause for not submitting evidence earlier. *See* 20 C.F.R. §

25

404.970(b) and § 416.1470(b).

The regulations require the Appeals Council to consider "new and material evidence." 20 C.F.R. § 404.970(b).  New evidence is "material" if it is: "(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.*

"'Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Camellia O.*, 2021 WL 354099, at *3 (quoting *Lesterhuis v. Colvin*, 805 F.3d 83, 86 (2d Cir. 2015), in turn quoting 20 C.F.R. § 404.970(b)).  "In cases such as this one, where the Appeals Council has denied review of the ALJ's decision, 'it is well-settled that [t]he role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision.'" *Id.* (quoting *Kirah D. v. Berryhill*, 2019 WL 587459, at *4 (N.D.N.Y. Feb. 13, 2019)(interior quotation marks and citations omitted)).  "Where 'the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded.'"  *Lorsandra D. W. v. Comm'r of Soc. Sec.*, No. 19-CV-01233, 2021 WL 1139852, at *4 (W.D.N.Y. Mar. 24, 2021)(quoting *Lofton v. Berryhill*, No. 17-CV-6709-JWF, 2019 WL 1244055, at *2 (W.D.N.Y. Mar. 18, 2019).

Here, in denying review, the Appeals Council stated:

We found no reason under our rules to review the Administrative Law

26

Judge's decision. Therefore, we have denied your request for review.

* * *

You submitted records from Lenox Hill Radiology dated December 27, 2017 (2 pages); records from Long Island Radiology Associates dated December 28, 2012 to June 22, 2013 (2 pages); and, a Questionnaire Response of Dr. Yardly PJ Shoulton, MD dated April 22, 2019 (7 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision.

Tr. 1-2.   No further explanation was provided.  *Id.*

Dr. Shoulton's April 2019 functional assessment is new in that it was not presented to the ALJ.[5]  Plaintiff's former *pro se* status and the insufficiently developed record before the ALJ provide good cause for not submitting this evidence earlier.  Dr. Shoulton's April 2019 functional assessment meets a *prima facie* basis of materiality in that it is relevant to and probative of Plaintiff's condition during the time period for which benefits were denied. The Appeals Council's perfunctory statement that the submitted evidence "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision" provides little for the Court to determine whether the decision was correct.  "[T]here may be reasons why the submitted medical [evidence] . . . would not change the outcome of the [ALJ's] decision, but it is the duty of the [Appeals Council] to specify what those reasons are." *Lorsandra D. W.*, 2021 WL 1139852, at *5 (citing *Faro v. Comm'r of Soc. Sec.*, No. 6:19-CV-6479 (CJS), 2020 WL 5361668, at *3 (W.D.N.Y. Sept. 8, 2020)).  The Appeals Council's decision essentially leaves the Court "without any idea as to whether the Council's ruling was correct, and with no way to make that determination except to

---

[5]Plaintiff directs her arguments to Dr. Shoulton's April 2019 functional assessment, and therefore the Court does not discuss records from Lenox Hill Radiology and Long Island Radiology Associates.

scrutinize the records on its own." *Mendez v. Comm'r of Soc. Sec.*, No. 17-cv-6824-CJS, 2019 WL 2482187, at *4 (W.D.N.Y. June 14, 2019).  However, because this matter is being remanded for other reasons and because the Court presumes that the evidence submitted to the Appeals Council will be offered on remand and considered by the ALJ, the Court declines to engage in an academic evaluation of the record to determine whether Dr. Shoulton's opinions expressed in the April 2019 functional assessment could reasonably have influenced the Commissioner to decide Plaintiff's application differently. *See id.* (declining to scrutinize the records); *Lorsandra D. W.*, 2021 WL 1139852, at *5 ("Although the Court will routinely review the record to decide whether the additional evidence would impact the outcome, here there are over 600 pages of documents, including the six opinions from treating sources which are voluminous, complex, and at times conflicting. In this case, the Court can only speculate how the [Appeals Council] considered the opinion evidence as the superficial letter to the plaintiff did not even identify any of the additional evidence as medical opinions. . . .  Accordingly, the Court concludes that this matter must be remanded to the Commissioner for appropriate consideration of the treating source opinions submitted to the Appeals Council.").

### c. Evaluation of  Plaintiff's Subjective Statements

Inasmuch as the matter will be remanded and the ALJ could make new determinations as to Plaintiff's RFC and whether Plaintiff is disabled in light of Dr. Shoulton's assessment and opinions expressed in the April 2019 functional assessment, the Court declines to rule whether the ALJ properly evaluated Plaintiff's subjective statements.  *See Smith v. Comm'r of Soc. Sec.*, No. 18-CV-6626 (MKB), 2020 WL 7262847, at *18 (E.D.N.Y. Dec. 10, 2020)("The Court is unable to review . . . whether the

ALJ properly assessed Plaintiff's subjective report . . . because the ALJ failed to develop the record."); *Corona v. Berryhill*, No. 15-CV-7117, 2017 WL 1133341, at *18 (E.D.N.Y. Mar. 24, 2017)(declining to address arguments as to whether the ALJ properly assessed the plaintiff's credibility when remanding for failure to develop the record).

### d.  Proper Appointment Pursuant to the Appointments Clause of Article II of the United States Constitution

Plaintiff contends that the matter should be remanded because "the ALJ who held a hearing in this case was not properly appointed at the time of the hearing as required by the Constitution's Appointments Clause based on the Supreme Court's holding in *Lucia v. SEC*, 138 S.Ct. 2044 (2018)." Dkt. 10 at 23.  Defendant responds that Plaintiff forfeited her Appointments Clause claim because she failed to assert to assert a challenge to the ALJ's appointment before the agency at any point in the administrative proceedings.  Dkt. 14 at 25.  Defendant also notes that on July 16, 2018, "the acting Commissioner ratified the appointment of SSA ALJs and Appeals Council administrative appeals judges and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims."  Dkt. 14 at 25, n. 19 (citing 84 Fed. Reg. 9582-02 (Mar. 15, 2019)).

As indicated above, the Court is remanding the case for a different reason.  Further, based on Defendant's representation that on July 16, 2018 all ALJs were properly appointed, the Court presumes that the ALJ who will be hearing Plaintiff's case on remand will have been properly appointed.[6]  This renders Plaintiff's Appointments Clause

---

[6]The Court notes that ALJ Moldafsky issued his decision in this case on September 27, 2018. Tr. 29. Based on Defendant's representation about the appointment of all ALJs on July 16, 2018, it appears that ALJ Moldafsky was properly appointed at the time he issued his decision in this case.

challenge moot.  *See Vessia v. Saul*, No. 2:16-CV-2865 (FB), 2019 WL 3553785 *3, n. 4 (E.D.N.Y. Aug. 5, 2019) (finding Appointments Clause challenge moot because case was being remanded for other reasons and presumably would be assigned to a properly appointed ALJ).

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED** and the Commissioner's motion is **DENIED**.  The case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.

The Clerk of the Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2021

Thomas J. McAvoy
Senior, U.S. District Judge